UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO. 4:17-cv-40126

KAREN PROUTY
                    *Plaintiff,*

          v.

RAMAKRISHNA THIPPANNA, M.D., BOGDAN
NEDELESCU, M.D., IDANIS BERRIOS
MORALES, M.D., JOHNNY S. SALAMEH,
JOHN/JANE DOE, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
CAROLYN PARKER, R.N., FAIRLAWN
MEDICAL INVESTORS, LLC , d/b/a LIFE CARE
CENTER OF AUBURN, and UMASS
MEMORIAL MEDICAL GROUP, INC.
                    *Defendant.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

## JURISDICTION & VENUE

1. Jurisdiction is conferred by 28 U.S.C. 1332, as the parties herein are of diverse

   citizenship (Florida Plaintiffs and Massachusetts Defendants). The amount in controversy

   exceeds $75,000.00, exclusive of interests and costs.

2. Venue resides in the Central Division of the United States District Court, District of

   Massachusetts pursuant to 28 U.S.C. 1391(b)(1 and 2) as all of the events giving rise to

   the claim occurred in this judicial district and the majority of the Defendants reside in this

   judicial district.

3. Massachusetts General Laws c. 231, §60L requiring 180 day written notice to the

   healthcare provider before the action is filed in court is inapplicable to this case as the

   statute of limitations was set to expire on October 7, 2017. G.L. c. 231, §60L(j).

## PLAINTIFFS

4. Plaintiff Karen Prouty ("Ms. Prouty" or "patient") is a resident of 9061 North Mercedes Terrace, Crystal River, Citrus County, Florida.

## DEFENDANTS

5. Defendant Fairlawn Medical Investors, LLC, doing business as Life Care Center of Auburn (hereinafter "Life Care Center of Auburn") is, upon information and belief, a foreign for-profit healthcare facility with a principal office located at 3570 Keith St., N.W., Cleveland, TN 37312 and a local location at 14 Masonic Cir., Auburn, Worcester County, Commonwealth of Massachusetts where Ms. Prouty received care. The registered agent for Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn is Corporation Service Company, located at 84 State Street, Boston, MA 02019. At all relevant times, Defendants Dr. Ramakrishna Thippannna, Dr. Bogdan Nedelescu, and Nurse Carolyn Parker were practicing within the scope of their employment, agency, or servitude for Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn.

6. The Defendant John/Jane Doe is the Personal Representative of the Estate of Carolyn Parker, R.N. who passed away on March 14, 2017. Carolyn Parker, R.N. ("Nurse Parker") was at all relevant times hereto a registered nurse licensed to practice in the Commonwealth of Massachusetts. At all relevant times hereto, Nurse Parker practiced the specialty of registered nursing. Nurse Parker had a place of business and was an employee of Defendant Life Care Center of Auburn. Upon information and belief, Defendant John/Jane Doe, Personal Representative of the Estate of Carolyn Parker's residential address is located within the Commonwealth of Massachusetts in Worcester County.

7.  Upon information and belief, Defendant Ramakrishna Thippanna, M.D. ("Dr. Thippanna") was at all relevant times hereto a physician licensed to practice medicine in the Commonwealth of Massachusetts. At all relevant times hereto, Dr. Thippanna practiced the specialty of internal medicine. Dr. Thippanna had a place of business and was an employee of Defendant Life Care Center of Auburn. Upon information and belief Dr. Thippanna's residential address is 4 Klondike Road, South Grafton, Worcester County, Massachusetts.

8.  Upon information and belief, Defendant Bogdan D. Nedelescu, M.D. ("Dr. Nedelescu") was at all relevant times hereto a physician licensed to practice medicine in the Commonwealth of Massachusetts. At all relevant times hereto, Dr. Nedelescu practiced the specialty of internal medicine. Dr. Nedelescu had a place of business and was an employee of Defendant Life Care Center of Auburn. Upon information and belief, Dr. Nedelescu's residential address is 1 Northland Road, Shrewsbury, Worcester County, Massachusetts.

9.  Upon information and belief, Defendant Idanis Berrios Morales, M.D. ("Dr. Berrios Morales") was at all relevant times hereto a physician licensed to practice medicine in the Commonwealth of Massachusetts. At all relevant times hereto, Dr. Berrios Morales was a neurology resident at the UMass Memorial Medical Center in Worcester, Massachusetts. Upon information and belief Dr. Berrios Morales' residential address is 603 Edgebrook Drive, Unit 6-1, Boylston, Worcester County, Massachusetts.

10. Upon information and belief, Defendant Johnny Salameh, M.D. ("Dr. Salameh") was at all relevant times hereto a physician licensed to practice medicine in the Commonwealth of Massachusetts. At all relevant times hereto, Dr. Salameh practiced the specialty of

neurology. Dr. Salameh had a place of business at UMass Memorial Medical Center in Worcester, Commonwealth of Massachusetts and upon information and belief was an employee of UMass Memorial Medical Group, Inc. Upon information and belief, Dr. Salameh's current business address is the American University of Beirut Medical Center, Maamari Street, Beirut, Lebanon.

11. Upon information and belief, Defendant UMass Memorial Medical Group, Inc. (hereinafter "UMass Medical Group") is, upon information and belief, a domestic for-profit healthcare facility with a principal office located at One Biotech Park, Third Floor, 365 Plantation Street, Worcester, Worcester County, Commonwealth of Massachusetts The President of UMass Medical Group is Daniel Lasser, located at 161 Richardson Drive, Needham, Commonwealth of Massachusetts.  At all relevant times, Defendant Dr. Johnny S. Salameh was practicing within the scope of his employment, agency, or servitude for UMass Medical Group.

## FACTS

12. Plaintiff Ms. Prouty, a then sixty-nine (69) year old female presented to the UMass Medical Center Memorial Campus ("UMMC Memorial") via ambulance early morning on October 3, 2014 as a level 3 trauma after she woke up on her couch unable to move and with complaints of back pain.

13. Thereafter Ms. Prouty was transferred to the UMass Medical Center University Campus ("UMMC University") and arrived at the UMMC University Emergency Department at 11:44. A CT Scan showed left sided rib fractures 3 through 7 and a small left sided hemothorax.

14. On October 3, 2014 at 1817 Ms. Prouty was admitted to the ICU for pain management at UMMC University.

15. On October 3, 2014 an epidural consult was requested at 1845. The consult occurred with Resident Dr. Arcelli (Attending Dr. Raimis Matullonis, M.D.) at or around 0016 on October 4, 2014.

16. Thereafter, an epidural catheter was placed.

17. On or about October 5, 2014, the first epidural catheter was removed and was replaced.

18. On October 5, 2014 Ms. Prouty began complaining of numbness and weakness in her lower extremities.

19. On October 6, 2014 Ms. Prouty's epidural catheter was discontinued and removed.

20. On October 7, 2014 at approximately 0518 Ms. Prouty underwent a CT scan of her lumbar, thoracic, and cervical spine. The CT scans were ordered by Dr. Edward Clune for persistent neuro deficit status post epidural removal and question of epidural hematoma. The report of radiologist Dr. Mona Korgaonkar (signed 10/7/14 at 1515) states that the CT evaluation of the thoracic spine was very suboptimal for epidural hematoma and a RI of the thoracic and lumbar spine was recommended.

21. On or about October 7, 2014, Ms. Prouty developed a patient physician relationship with Dr. Berrios Morales and Dr. Salameh.

22. On October 7, 2014 at approximately 1518, Dr. Berrios Morales evaluated Ms. Prouty and diagnosed her with partial paraplegia. Dr. Berrios Morales further noted that Ms. Prouty complained of bowel incontinence. Dr. Berrios recommended continued monitoring of Ms. Prouty and if symptoms do not improve consider MRI of thoracic and lumbar spine.

23. According to Dr. Berrios Morales' note of 1618 on 10/7/14, the CT evaluation of Ms. Prouty done to look for any epidural hematoma was unremarkable (this is incorrect as the radiologist's report states the study was suboptimal for epidural hematoma evaluation).

24. According to Dr. Berrios Morales' note of 1618 on 10/7/14, Dr. Berrios Morales discussed Ms. Prouty's case with Dr. Salameh, who agreed with Dr. Berrios Morales' plan.

25. On or about October 8, 2014 at approximately 0134, Ms. Prouty underwent a MRI of her thoracic spine ordered by Dr. Nam Kim. The reason stated for the MRI was as follows: "Patient s[tatus]/p[ost] epidural placement for left rib fractures – developed progressive motor and sensory dysfunction in bilateral lower extremities with bowel incontinence. Epidurals removed but symptoms have not significantly improved more than 24 hours later. ? spinal cord contusion."

26. According to the report of radiologist Dr. Rania Hito (electronically signed on 10/8/14 at 0937), the findings of the MRI were concerning for epidural hematoma with resulting cord compression from T2 through T8.

27. According to the report of radiologist Dr. Rania Hito (electronically signed on 10/8/14 at 0937), the preliminary results of Ms. Prouty's MRI were discussed with John O'Grady, P.A. at 0900 on October 8, 2014.

28. A spinal assessment was performed by orthopedic resident Dr. Daniel Mandell at approximately 0930 on October 8, 2014. The plan was to bring Ms. Prouty to the operating room for surgical decompression. Dr. Mandell signed the spinal assessment at 1130 on 10/8/14, and attending Dr. Christian DiPaola signed the spinal assessment at 1417 on 10/8/14.

29. On October 8, 2014 from approximately 1420 to 1725, Ms. Prouty underwent a T4-T7 laminectomy for evacuation of epidural hematoma performed by Dr. Christian DiPaola (assisted by Dr. Chad Lasceski).

30. Following the laminectomy, Ms. Prouty had some increase in strength in her leg but still had trouble with bladder and bowel incontinence.

31. On October 15, 2014. Ms. Prouty was transferred to Fairlawn Rehabilitation Hospital.

32. On or about October 15, 2014 Ms. Prouty developed a patient-physician/patient-medical provider relationship with Nurse Esper, Rebecca St. Amand PA-C, Dr. Trista Brown, Nurse Horton, Patricia MacCulloch NP, Minjin Fromm MD, Debra Twehous MD, Kunle Fajana MD, and NP Maura Hossack.

33. Ms. Karen Prouty was reviewed by NP Maura Hossack on 10/15/2014. The attending physician was Dr. Kunle Fajana MD (internist). Ms. Hossack noted that the reason for rehab transfer was impaired activities of daily living (ADLs), impaired gait and mobility secondary to poorly placed epidural resulting in lower extremity paralysis. NP Hossack noted that on examination there was decreased strength in the lower extremities. She also ordered Complete Blood Count (CBC), Basic Metabolic Panel (BMP), albumin and prealbumin. NP Hossack noted that the patient would be seen by Physiotherapist (PT), Occupational Therapist (OT) and Rehab Medicine and be maintained on falls precautions.

34. On 10/16/2014 Ms. Prouty was reviewed by Debra Twehous MD (Physiatrist). She noted that the patient was independent with all mobility and ADLs prior to the admission at UMass. She also noted that currently the patient required moderate to total assistance for ADLs and mobility. She also noted that the patient had 6/10 back pain, incontinence of

bladder and bowel, lack of sensation when she needs to void, weakness of the legs and patchy numbness.

35. On examination on 10/16/14 Ms. Prouty's muscle power ranged from 1-4/5 in the lower extremities. Dr. Twehous noted that the diagnosis was spinal cord injury due to epidural hematoma status post T2-7 laminectomy and clot evacuation. Dr. Twehous also noted that the patient would undergo a comprehensive program of rehabilitation for 3 to 4 weeks and the discharge goal was home at modified independent for mobility and ADLs. Dr. Twehous also noted that pain seemed to be adequately controlled on oxycodone 5-10 mg every four hours as needed.

36. On 10/20/2014 at 17:40 Ms. Prouty was reviewed by Dr. Minjin Fromm MD (Physiatrist) who noted that the patient had started developing pain going down the left leg over the previous three days. Dr. Fromm also noted that the pain was managed with Oxycodone when necessary but the patient might also benefit from Gabapentin if the pain persisted.

37. On 10/24/2014 Ms. Prouty was reviewed by Dr. Fromm who noted that the patient was having some urinary retention alternating with incontinence. Dr. Fromm advised catheterization if the post void residual urine was greater than 350 ml, discontinued oxybutynin and started the patient on bethanechol.

38. On 10/27/2014 Ms. Prouty was seen by Dr. Twehous who noted that the patient had an ankle injury that day and was now sensing the need to have a bowel movement. Dr. Twehouse also noted that on examination the most distal portion of Ms. Prouty's thoracic spine incision was dehiscing and there was some drainage. Dr. Twehouse also mentioned that Ms. Prouty's urinary incontinence was interfering with rehab and that Ms. Prouty agreed to have a Foley catheter.

39. On 10/28/2014 Ms. Prouty was seen by Patricia MacCulloch NP at UMass Memorial Spine Center. NP MacCulloch advised ABD dressing, side to side positioning, air mattress, nutrition consult and to continue PT/OT.

40. On 10/29/2014 at 16:19 Ms. Prouty was reviewed by Nurse Horton who noted that Ms. Prouty said that she walked 12 steps that day. On examination there was shallow dehiscence in the inferior portion of the back incision with slough and minimal serous drainage. Ms. Horton also noted that daily ABD (Army Battle Dressing) pads were being used for the back incision and air mattress also had been ordered.

41. On 10/31/2014 Ms. Prouty was reviewed by Dr. Twehous who noted that the patient was making good progress towards goals and that she was getting good return in the lower extremities. Ms. Prouty also requested that the Foley catheter be left in place and was now continent of stool having been on a bowel program. Dr. Twehous also noted that the patient was on Cipro 500mg b.i.d. for a urinary tract infection.

42. On 11/3/2014 Ms. Prouty was reviewed by Dr. Trista Brown (Physiatrist) who noted that the patient was reporting increasing left lower extremity pain. Ms. Prouty described it as a sharp shooting pain which was interfering with her therapy progress. Dr. Brown initiated gabapentin 100 mg b.i.d and continued oxycodone, acetaminophen and Valium.

43. On 11/3/2014 at 16:26 Ms. Prouty was reviewed by Rebecca St. Amand PA-C who noted that Ms. Prouty said that her left hip was hurting so much that she could not move. On examination there was a left knee effusion which was aspirated bedside by Dr. Fajana and the fluid was sent to the lab for analysis.

44. On 11/6/2014 Ms. Prouty was reviewed by Dr. Trista Brown who noted that the patient's pain was better controlled that day. On examination it was noted that the mid upper back

incision had an area of wound dehiscence but no drainage was noted and the base was clean. The buttocks had an area of excoriation and redness and skin was denuded at the site. Dr. Brown also noted that the patient had outpatient follow up with neurosurgery that day and they were pleased with her progress. She was advised Betadine swab and dry sterile dressing twice daily for the back incision. Dr. Brown also noted that the joint fluid showed calcium pyrophosphate crystals suggestive of pseudogout and prednisone taper was initiated.

45. On 11/10/2014 Ms. Prouty was reviewed by Rebecca St. Amand who noted that the patient's left knee pain had improved and she was able to ambulate 20 feet with a rolling walker and minimal assistance. PA St. Amand decided to continue prednisone taper and gait training.

46. On 11/13/2014 Ms. Prouty was reviewed by Dr. Brown who noted that the patient had issues with bowel impaction. On examination the area of wound dehiscence at the midupper back incision site had increased in size with tunneling. However no drainage was noted and the base was clean. Dr. Brown started the patient on MiraLax and also noted that the patient was now walking 40 feet with minimal assistance and a rolling walker. Dr. Brown also contacted the neurosurgery service and informed them of the increasing size of the incision site wound.

47. On 11/14/2014 Ms. Prouty was reviewed by NP MacCulloch at UMass Spine Center. NP MacCulloch noted that there was new wound dehiscence without infection. NP MacCulloch advised wound VAC, silver granufoam dressing and suction at 125 mm hg.

48. On 11/17/2014 Ms. Prouty was reviewed by Dr. Brown who noted that the patient reported continued left lower extremity pain and left knee joint pain at times. The patient also

complained of constipation. Dr. Brown also noted that the patient continued to make gains in the therapy setting. Dr. Brown increased gabapentin to 200 mg t.i.d. and added lactulose. Dr. Brown also set a tentative discharge date of 11/19/2014.

49. On 11/18/2014 at 14:37 Ms. Prouty was followed up by PA St. Amand who noted that the patient felt very dry and did not feel well that day. PA St. Amand also noted that the patient had >1, 00,000 E. coli on urine culture and changed the antibiotics to Macrobid 100mg b.i.d for 7 days.

50. On 11/20/2014 Ms. Prouty was reviewed by Dr. Brown who noted that the sacral wound area had healed and discontinued ExuDerm dressing. Dr. Brown also noted that the patient was walking 40 feet with rolling walker and minimal assistance. Dr. Brown also decided to continue the patient's pain medications, foley catheter and bowel program. Dr. Brown also noted that a bed was available for Ms. Prouty at Lifecare Auburn and set a tentative discharge date for 11/20/2014.

51. On 11/21/2014 Ms. Prouty was followed up by Nurse Esper who noted that the patient slept the best last night. The patient also reported pain in her left leg but her pain medication was helping. Ms. Prouty was also incontinent of bowels on 11/21/2014. Ms. Prouty also did not want her Foley to be removed. Vital signs were normal.

52. Nurse Esper also noted that the patient was walking 20 feet with a rolling walker and minimal assistance and decided to continue PT. Nurse Esper also noted that the patient was on gabapentin 200 mg t.i.d, acetaminophen 650 mg q4hrs prn, oxycodone 5 mg q4hrs prn for moderate pain, oxycodone 10mg q4hrs prn for severe pain and Valium 2 mg 4 times a day prn for spasms. Nurse Esper decided to continue with the patient's pain medications

and the current bowel program. She also noted that the patient also had a follow up appointment in UMass Memorial Spine center on 12/4/2014.

53. On 11/21/2014 at 12:11 Rebecca St. Amand PA-C wrote a discharge summary for Ms. Prouty in which she mentioned that Ms. Prouty still complained of considerable pain, unknown whether it was from the epidural or chronic back pain. PA St. Amand also mentioned that the patient also complained of left leg pain and spasms. It was also mentioned that the patient was also complaining of pain from her sternum that wrapped around her left side to right side. The patient also complained of nausea and vomiting and she vomited once on the morning of 11/21/2014. Ms. Prouty was also not happy about going to a skilled nursing facility.

54. On 11/21/2014 at 19:30 Ms. Prouty was transferred to Lifecare Center at Auburn.

55. Between 11/21/2014 and 12/16/2014 Ms. Prouty developed a patient-physician/ patient-medical provider relationship with Dr. Bogdan Nedelescu, Jill White LPN, Carolyn Parker, APRN, NP Lawrence, Ashley Peters, RN, Dr. Ramakrishna Thippanna, Wesley Regis, LPN, Tara Skerry, RN, Jennifer Benoit, RN, Corinne Kingston, RN, Maribeth Harrigan, APRN-C, Carmen Zayas RN, and Jennifer Raymond, RN.

56. On 11/21/14 Dr. Bogdan Nedelescu MD (Internal Medicine) was the attending physician. Ms. Prouty was seen by Jill White LPN (Licensed Practice Nurse). Nurse White noted that the patient was friendly and appeared comfortable. Nurse White also noted that the patient stated that she had chronic and acute back pain 8/10 with muscle spasms. Nurse White also noted that skin assessment revealed few small bruises to abdomen, peri-area red, as well as coccyx and buttocks. Heels were red and blanchable. Nurse White reviewed the admission

paperwork, verified the medications with A. Lawrence NP and noted that there were no other issues noted at that time.

57. On 11/22/2014 Ms. Prouty was reviewed by Ashley Peters RN who noted that the patient complained of pain 8/10 back pain at 09:00 and 13:00 and was given oxycodone 10 mg orally. Nurse Peters also noted that the patient reported that the medication was very effective in relieving the pain.

58. On 11/22/2014 Dr. Thippanna performed a history and physical examination on Ms. Prouty and noted the upper thoracic wound that had a wound VAC on. Dr. Thippanna also noted that the power was 4/5 in both lower extremities. Dr. Thippanna also planned to continue the patient's medications.

59. On 11/23/2014 it was noted by Wesley Regis LPN, Ashley Peters RN, and Tara Skerry, RN that the patient reported pain at 00:30, 05:40, 09:30, 13:45 and 17:30 and was given prn oxycodone with good results.

60. On 11/24/2014 Ms. Prouty was reviewed by Carolyn Parker APRN (Advanced Practice Registered Nurse) who noted that there were no new concerns per nursing and patient. Nurse Parker also noted that the skin was warm, dry with no rashes, wounds or pressure ulcers. Nurse Parker planned to continue with the current medications and treatment plan.

61. On 11/25/2014 at 23:54 Jennifer Benoit, RN noted that there was a skin tear on the patient's coccyx and NP was made aware. Allevyn patch was ordered for that night and the plan was to have the wound team to assess in the morning.

62. On 11/26/2014 Ms. Prouty was reviewed by Carolyn Parker APRN who noted that there were no rashes, skin wounds or pressure ulcers.

63. On 11/27/2014 it was noted on the weekly skin integrity data collection chart that there was a stage 2 pressure ulcer on Ms. Prouty's buttocks.

64. On 11/28/2014 Ms. Prouty was reviewed by Carolyn Parker APRN. Nurse Parker noted that the patient had back pain and that on skin examination there were no rashes, skin wounds or pressure ulcers.

65. On 11/30/2014 at 01:13 Nurse Benoit reviewed the patient and noted that Ms. Prouty continued to have a wound vac set at 125 mm hg per the order and that Ms. Prouty also had a pressure ulcer on her coccyx with an Alleyvn dressing and that the pressure ulcer was to be addressed by the wound team on Monday. Nurse Benoit further noted that Ms. Prouty was in 7/10 pain throughout most of the shift and was given 10mg of oxycodone at 7pm and 11pm with minimal effect.

66. On 11/30/2014 at 04:30 Corinne Kingston RN noted that frequent repositioning was provided.

67. On 11/30/2014 at 23:09 Nurse Benoit noted that the patient had been repositioned every 2 hr. Nurse Benoit also noted that Ms. Prouty complained of pain at 18:00 and 22:00 and was given oxycodone 10 mg both times with minimal effect.

68. On 12/01/2014 Ms. Prouty was reviewed by Ms. Parker APRN who noted that the patient had a wound in her coccyx and also noted that the patient was requesting to be woken up for pain medication.

69. On 12/01/2014 in the risk for pressure ulcer document it was noted that an airmattress and CPI (Closed Pulse Irrigation) for debridement was ordered. However the column for specifying the turning &r epositioning program was left blank. Braden score was also not filled. It was also noted that the plan was to complete weekly skin assessment, assist prn

to reposition /shift weight to relieve pressure, provide pressure relieving device in the form of an air mattress and float heels while in bed. It was also planned to provide incontinence care after incontinence episodes, avoid prolonged periods of skin to skin contact, provide diet as ordered and monitor nutritional status, and monitor lab results as ordered and report abnormal results to physician.

70. On 12/02/2014 Ms. Prouty was reviewed by Ms. Parker APRN who noted that the wound on Ms. Prouty's coccyx was larger and CPI would be used on area for debridement. Nurse Parker also noted on skin examination that there were no rashes, skin wounds or pressure ulcers. Nurse Parker also continued the rest of the treatment plan and medications.

71. On 12/03/2014 Ms. Prouty was reviewed by a PA student and Dr. Thippanna. It was noted that since admission to Auburn Lifecare rehab Ms. Prouty was having increasing lower extremity weakness and pain preventing her from getting out of bed. It was also noted that Ms. Prouty was having increasing left sided thoracic discomfort. On examination it was noted that Ms. Prouty was in discomfort secondary to rib pain. It was also noted that there was bilateral lower extremity weakness with range of motion limited due to pain. On skin examination it was noted that the right heel was erythematous with skin intact and there was also erythema at right lower back and buttocks. It was decided to continue with oxycodone 5mg prn and add fentanyl patch 12 mcg/hr for pain control. It was also planned to get a neurology consult for increasing lower extremity weakness. It was also noted that the patient had a follow up appointment with spine surgery the next day.

72. On 12/03/2014 Ms. Prouty had a chest x-ray  which was reported to have old appearing left rib fractures.

73. On 12/04/2014 at 00:56 it was noted by Nurse Benoit that 10mg of oxycodone was given at 18:00 for breakthrough pain with minimal effect. She also noted that the dressing to coccyx was replaced 3 times that night due to incontinence of bowels.

74. On 12/04/2014 at 02:27 it was noted by Ashley Peters RN that there was a new right heel ulcer and skin was boggy and intact measuring 1 ¼' × ¾'. NP and nurse manager were notified and new orders were given to float heels while in bed.

75. On 12/04/2014 blood chemistry results showed Sodium of 139, Potassium of 4.4, low Blood Urea Nitrogen(BUN) of 7, low Calcium of 8.3, low total protein of 5.5, low albumin of 2.9 and a critically low prealbumin of 6.0. It was also noted that the results were reported to Nurse Parker who gave no new orders.

76. On 12/04/2014 Ms. Prouty was reviewed by Nurse Parker who noted that there was a new ulcer on left heel. She also noted that the patient's pain in her coccyx was under control with fentanyl patch and oxycodone. On skin examination Ms. Parker noted that there was a decubitus ulcer in the left buttock. Nurse Parker planned to continue current treatment plan and medications.

77. On 12/05/2014 Ms. Prouty was reviewed by Nurse Parker who noted that there were no new patient concerns and that the pain medication was working per patient. Nurse Parker also noted that there was a decubitus ulcer in the left buttock. She planned to continue CPI with dressing for the decubitus ulcer and fentanyl patch and oxycodone for pain.

78. On 12/06/2014 and on 12/08/2014 Ms. Prouty was reviewed by Ms. Maribeth Harrigan, APRN-C and Nurse Parker who both noted no new concerns and continued current treatment.

79. On 12/09/2014 Ms. Prouty was reviewed by Nurse Parker who noted that there were no new concerns. Nurse Parker also noted that the patient refused PT. Nurse Parker planned to rule out intestinal obstruction by doing an x-ray KUB. Nurse Parker also planned to increase Fentanyl patch to 25mcg/hr, continue oxycodone, add Neurontin 200mg at bed time and continue CPI.

80. On 12/09/2014 the x-ray KUB showed mild dilation of both Ms. Prouty's large bowel and small bowel suggestive of ileus. Blood chemistry showed sodium of 138, potassium 4.7, BUN 13 and creatinine 0.5. CBC was normal.

81. On 12/10/2014 at 00:19 Nurse Benoit noted that Ms. Prouty complained of increasing abdominal pain and NP was aware. Nurse Benoit also noted that the NP ordered KUB and labs. Nurse Benoit also noted that the patient received prn 10 mg oxycodone at 21:30 for 7/10 pain with minimal effect.

82. On 12/10/2014 at 23:08 Carmen Zayas RN noted that the patient was in bed all shift.

83. On 12/11/2014 Ms. Prouty was reviewed by a Life Care Center nurse who noted that the patient complained of chronic back and generalized pain. The nurse also noted that the patient was making progress with PT/OT and rehabilitation was progressing well. The nurse planned to continue current treatment plan.

84. On 12/12/2014 at 12:55 Nurse Peters noted that the coccyx wound had a large tunneling area. There was also slough, strong necrotic odor and NP was notified to assess. At 14:10 after speaking with Patricia Mccullogh NP, Nurse Parker, and Dr. Delacey (PCP)

regarding declining wound status Ms. Prouty was sent to ER at UMass Lake avenue and the family was notified.

85. On 12/13/2014 it was noted by Nurse Benoit that Ms. Prouty returned from E.R. at 22:15 with new orders for Keflex 500mg qid and Bactrim DS bid for 10 days.

86. On 12/13/2014 at 16:12 it was noted by Jennifer Raymond, RN that the patient had 10/10 pain at 9 am and 1 pm and was given oxycodone 10 mg with moderate effect. Nurse Raymond also noted that the patient refused therapy and heel dressing change. Urine sample was also sent to the lab.

87. On 12/13/2014 at 22:23 it was noted by Nurse Raymond that the patient had 10/10 pain at 17:45. Ms. Prouty's oral intake was also poor and she would not move in bed.

88. On 12/14/2014 at 22:25 it was noted by Nurse Benoit) that Ms. Prouty spent the whole 11-11 shift in bed. Ms. Prouty complained of 7/10 pain and muscle spasms and was given Valium and oxycodone with minimal effect. Ms. Prouty's appetite was also decreased.

89. On 12/15/2014 urinalysis was reported to show 2+blood, 2+ protein, positive nitrites, 2+ Leucocyte esterase, 2+bacteria and >180 WBC. The report was signed by Nurse Parker.

90. On 12/15/2014 Ms. Prouty was reviewed Nurse Parker who noted that the patient was refusing to eat or drink. Nurse Parker also noted that Ms. Prouty had an oncology clinic referral and mammogram for AM. Nurse Parker also noted that Ms. Prouty had pain in her back and lower extremity. Ms. Prouty's vitals were blood pressure 143/84, pulse 81, respiratory rate 18 , temperature 98 F, and saturations 96% on 2L oxygen. Nurse Parker also noted that Ms. Prouty was sleepy and arousable. Ms. Prouty was oriented to person but not to place or time. Nurse Parker's plan included pain management with Valium,

oxycodone, Fentanyl patch and Neurontin, follow up with oncology on 12/22/14, and

psychiatry consult.

91. On 12/16/2014 Ms. Prouty's urine culture was reported to have grown E.Coli > 1,00,000

cfu/ml and it was sensitive to Cefazolin.

92. On 12/16/2014 it was noted by Ashley Peters RN that Ms. Prouty had 8/10 pain

everywhere and was given oxycodone. Ms. Prouty reported medication was not effective

in managing pain. Ms. Prouty reported pain of 12/12 at 10:00 when her family came in to

visit. Ms. Prouty and her family then requested to be sent to hospital for further

evaluation and pain management.

93. Ms. Proutywas then transferred to UMass at 10:20.

94. Ms. Prouty was admitted to UMass on 12/16/2014 because of increasing symptoms of

painful lower extremity spasms, difficulty completing her exercises, increasing left rib

pain, decreased oral intake, and diarrhea with fecal incontinence. The patient had a repeat

MRI of her lumbar spine which suggested that there was some collection in the epidural

area less well defined than on the previous evaluation, some increased fluid signal in the

posterior paraspinal tissues, and without evidence of severe narrowing in the spinal canal.

There was a question of some cord edema although the previous appearance of an

expansile cord lesion was no longer present. Ms. Prouty was assessed for infectious and

mechanical abnormalities in the area. Ms. Proutyreceived a single dose of vancomycin

and Zosyn and had consultations with orthopedic and spine surgery, who did not feel that

an infectious process was present. Ms. Prouty had a consultation with plastic surgery for

a stage 4 pressure ulcer on the coccyx, was managed with analgesics and discharged to

Fairlawn for additional rehab on 12/19/2014.

95. On 12/19/2014 Ms. Prouty was assessed by Dr. Gary Wolf MD- Rheumatologist at Fairlawn Rehabilitation Hospital who noted that Ms. Prouty still had periodic spasms of pain in the spine going into the legs. Dr. Wolf also noted that Ms. Prouty only had a small amount of movement in her right foot, but not the left. Ms. Prouty was still aware of a moderate amount of left rib pain and was using Lidoderm patches and oxycodone. On examination Dr. Wolf noted there was flaccid paralysis and decreased muscle bulk in the lower extremities. Dr Wolf's plan was for rehab, DVT prophylaxis and wound care for the sacral decubitus ulcer.

96. On 12/20/2014 Ms. Prouty was assessed by Neethi Shetty PT who noted that Ms. Prouty's ambulation distance was 0 feet.

97. On 12/22/2014 Ms. Prouty was reviewed by Dr. Trista Brown who noted that plastic surgery advised wound VAC dressing with Y connector for the stage 4 pressure ulcer on the coccyx. Dr. Brown also noted that the patient was placed on a low air loss mattress. Dr. Brown also noted that the patient was still having stool incontinence, abdominal pain, pain and spasms involving both lower extremities, weakness and spasticity of both legs, and upper back and sacral wounds. Dr. Brown also noted that wound VAC was in place over both upper back and sacral wounds. She also noted that there was a 4 cm × 4 cm wound in the right heel with eschar and left heel was boggy , erythematous and had a blister. Dr. Brown also noted that there was markedly increased tone in both lower extremities and power ranged from 1/5 to 3-/5. Dr. Brown also noted that there were bilateral knee flexion contractures. Dr. Brown also noted that Ms. Prouty was presently at a low functional level and would not be able to make enough gains in a short period of

time to return home. Medically Dr. Brown planned to continue wound care, continue oxycodone, increase Valium, and continue current bowel regimen.

98. On 12/22/2014 Ms. Prouty was reviewed by Nurse St. Amand and Dr. Fajana who noted that Ms. Prouty was able to move her legs prior to discharge to Life Care on 11/21/2014. They also noted that Ms. Prouty's legs were now contracted and she was nonambulatory. They also noted that the stage 4 sacral decubitus ulcer was not present upon discharge from Fairlawn on 11/21/2014.

99. Ms. Prouty then underwent continued rehabilitation in Fairlawn until 1/1/2015 when she was transferred to UMass on an emergent basis because of altered mental status and tachycardia.

100. After discharge from UMass on 1/5/15, Ms. Prouty then was transferred to a skilled nursing facility called The Meadows and then had further admissions in UMass and Fairlawn.

101. Ms. Prouty continues to have very limited movement in her legs, bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living.

## CLAIMS

102. There was a delay of at least twenty-four hours in diagnosing Ms. Prouty's epidural hematoma with spinal cord compression.

103. This delay in diagnosing the epidural hematoma (and resultant delay in treating Ms. Prouty's spinal cord compression and epidural hematoma) caused Ms. Prouty to experience spinal cord compression and caused her to become paraplegic, bowel and urinary incontinent, and require assistance in all activities of daily living.

104.     While at Life Care Center Auburn, Ms. Prouty experienced a dramatic deterioration in her condition from the time she was admitted on 11/21/14 to the time of her transfer to UMass Memorial Medical Center on 12/16/14 due to poor care, delay in identifying and treating Ms. Prouty's deterioration, poor pain management, lack of pressure ulcer prevention, delayed hospitalization for deterioration, and poor nutritional management, among others.

105.     As a result of the poor treatment Ms. Prouty received at Life Care Center Auburn (including care and treatment from Defendants Dr. Nedelescu, Dr. Thippana, and Nurse Parker), Ms. Prouty developed a stage 4 pressure ulcer on her coccyx, pressure ulcers on her heals, leg contractures, loss of mobility in her lower extremities, and weakness.

106.     As a result of the Defendants failures to timely diagnose and treat Ms. Prouty's epidural hematoma with spinal cord compression, and failures to provide appropriate care compliant with the standard of care at Life Care Center Auburn (including pressure ulcer prevention, nutritional management, and pain management), Ms. Prouty has suffered permanent injury including lower extremity paraplegia, bowel and urinary incontinence, pressure ulcers, ongoing pain and suffering, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living.

## COUNT I – NEGLIGENCE
## KAREN PROUTY v. JOHN/JANE DOE, PERSONAL REPRESENTATIVE OF THE ESTATE OF CAROLYN PARKER, A.P.R.N.

107.     Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 106 above as if expressly set forth herein and further states and avers as follows:

108.     Carolyn Parker, APRN negligently, carelessly, and/or unskillfully treated the Plaintiff Ms. Prouty and deviated and fell below the accepted standard of care for the

average qualified member of the profession practicing as an advanced practice registered nurse in the Commonwealth of Massachusetts in 2014, taking into account the advances in the profession, by and among other things:

a. Failing to adopt measures in accordance with the standards of care to prevent, monitor, and treat pressure ulcers;

b. Failing to control Ms. Prouty's pain adequately,

c. Failing to identify a deterioration in Ms. Prouty's general condition and neurologic status;

d. Failing to hospitalize Ms. Prouty in a timely manner;

e. Failing to act on a critically low prealbumin level and obtain a review by a dietician on 12/4/14;

f. Inappropriately planning a psychiatry consult on 12/15/14 when the patient had deteriorated medically; and

g. Failing to monitor and maintain Ms. Prouty's nutritional status.

109.     As a direct and proximate result of the negligence and carelessness of Carolyn Parker, APRN, the Plaintiff, Ms. Prouty, developed various serious and debilitating physical and medical conditions including pressure ulcers, leg contractures, paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living. As a further direct and proximate result of Carolyn Parker, APRN's negligent conduct, Plaintiff Ms. Prouty has incurred and will continue to incur extraordinary medical, residential, and other expenses to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant Jane/John Doe, Personal Representative of the Estate of Carolyn Parker, APRN for monetary damages to be determined by a jury, plus interest and costs.

## COUNT II – NEGLIGENCE
## KAREN PROUTY v. RAMAKRISHNA THIPPANNA, M.D.

110.     Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 109 above as if expressly set forth herein and further states and avers as follows:

111.     Ramakrishna Thippanna, MD negligently, carelessly, and/or unskillfully treated the Plaintiff Ms. Prouty and deviated and fell below the accepted standard of care for the average qualified member of the profession practicing as an internal medicine physician in the Commonwealth of Massachusetts in 2014, taking into account the advances in the profession, by and among other things:

    a.   Failing to adopt measures in accordance with the standards of care to prevent, monitor, and treat pressure ulcers;

    b.   Failing to control Ms. Prouty's pain adequately,

    c.   Failing to identify a deterioration in Ms. Prouty's general condition and neurologic status;

    d.   Failing to obtain a neurological consult for Ms. Prouty's deteriorating lower extremity weakness;

    e.   Failing to recognize Ms. Prouty's general deterioration;

    f.   Failing to hospitalize Ms. Prouty in a timely manner; and

    g.   Failing to follow up on Ms. Prouty after 12/3/2014 while Ms. Prouty was under her care.

112.     As a direct and proximate result of the negligence and carelessness of
Ramakrishna Thippanna, MD, the Plaintiff, Ms. Prouty, developed various serious and
debilitating physical and medical conditions including pressure ulcers, leg contractures,
paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a
week, 365 days a year care and assistance with all activities of daily living. As a further
direct and proximate result of Ramakrishna Thippanna, MD's negligent conduct, Plaintiff
Ms. Prouty has incurred and will continue to incur extraordinary medical, residential, and
other expenses to obtain care for the rest of her life, and has suffered severe emotional
distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against
Defendant Ramakrishna Thippanna, MD for monetary damages to be determined by a jury, plus
interest and costs.

## COUNT III – NEGLIGENCE
## KAREN PROUTY v. BOGDAN NEDELESCU, M.D.

113.     Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through
112 above as if expressly set forth herein and further states and avers as follows:

114.     Bogdan Nedelescu, MD negligently, carelessly, and/or unskillfully treated the
Plaintiff Ms. Prouty and deviated and fell below the accepted standard of care for the
average qualified member of the profession practicing as an internal medicine physician
in the Commonwealth of Massachusetts in 2014, taking into account the advances in the
profession, by and among other things:

a.   Failing to adopt measures in accordance with the standards of care to prevent,
monitor, and treat pressure ulcers;

b.   Failing to control Ms. Prouty's pain adequately,

25

    c.   Failing to identify a deterioration in Ms. Prouty's general condition and neurologic status;

    d.   Failing to hospitalize Ms. Prouty in a timely manner;

    e.   Failing to obtain a neurological consult for Ms. Prouty's deteriorating lower extremity weakness;

    f.   Failing to recognize Ms. Prouty's general deterioration; and

    g.   Failing to follow up on Ms. Prouty after 11/21/14 while Ms. Prouty was under his care.

115.    As a direct and proximate result of the negligence and carelessness of Bogdan Nedelescu, MD, the Plaintiff, Ms. Prouty, developed various serious and debilitating physical and medical conditions including pressure ulcers, leg contractures, paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living. As a further direct and proximate result of Bogdan Nedelescu, MD's negligent conduct, Plaintiff Ms. Prouty has incurred and will continue to incur extraordinary medical, residential, and other expenses to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant Bogdan Nedelescu, MD for monetary damages to be determined by a jury, plus interest and costs.

## COUNT IV- NEGLIGENCE
## KAREN PROUTY v. IDANIS BERRIOS MORALES, M.D.

116.    Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through 115 above as if expressly set forth herein and further states and avers as follows:

117.     Idanis Berrios Morales, MD negligently, carelessly, and/or unskillfully treated the Plaintiff Ms. Prouty and deviated and fell below the accepted standard of care for the average qualified member of the profession practicing as a medical doctor and third year neurology resident in the Commonwealth of Massachusetts in 2014, taking into account the advances in the profession, by and among other things:

    a.   Failing to recognize the radiologist's report of 10/6/14 for the thoracic spine  CT noted that the study was suboptimal for evaluation for epidural hematoma;

    b.   Failing to timely order a MRI to diagnose Ms. Prouty's epidural hematoma with spinal cord compression; and

    c.   Failing to diagnose Ms. Prouty's epidural hematoma with spinal cord compression in a timely manner and request emergency evacuation surgery.

118.     As a direct and proximate result of the negligence and carelessness of Idanis Berrios Morales, MD, the Plaintiff, Ms. Prouty, developed various serious and debilitating physical and medical conditions including pressure ulcers, leg contractures, paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living. As a further direct and proximate result of Idanis Berrios Morales, MD's negligent conduct, Plaintiff Ms. Prouty has incurred and will continue to incur extraordinary medical, residential, and other expenses to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant Idanis Berrios Morales, MD for monetary damages to be determined by a jury, plus interest and costs.

## COUNT V- NEGLIGENCE
## KAREN PROUTY v. JOHNNY S. SALAMEH, M.D.

119.    Plaintiff repeats and incorporates herein the allegations in paragraphs 1 through

118 above as if expressly set forth herein and further states and avers as follows:

120.    Johnny S. Salameh, MD negligently, carelessly, and/or unskillfully treated the

Plaintiff Ms. Prouty and deviated and fell below the accepted standard of care for the

average qualified member of the profession practicing as a neurology attending physician

in the Commonwealth of Massachusetts in 2014, taking into account the advances in the

profession, by and among other things:

    a.  Failing to recognize the radiologist's report of 10/6/14 for the thoracic spine  CT

       noted that the study was suboptimal for evaluation for epidural hematoma;

    b.  Failing to timely order a MRI to diagnose Ms. Prouty's epidural hematoma with

       spinal cord compression;

    c.  Failing to change Dr. Berrios Morales' plan of treatment; and

    d.  Failing to diagnose Ms. Prouty's epidural hematoma with spinal cord

       compression in a timely manner and request emergency evacuation surgery.

121.    As a direct and proximate result of the negligence and carelessness of Johnny S.

Salameh, MD, the Plaintiff, Ms. Prouty, developed various serious and debilitating

physical and medical conditions including pressure ulcers, leg contractures, paraplegia,

ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365

days a year care and assistance with all activities of daily living. As a further direct and

proximate result of Johnny S. Salameh, MD's negligent conduct, Plaintiff Ms. Prouty has

incurred and will continue to incur extraordinary medical, residential, and other expenses

to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant Johnny S. Salameh, MD for monetary damages to be determined by a jury, plus interest and costs.

### COUNT VI – VICARIOUS LIABILITY
### KAREN PROUTY v. FAIRLAWN MEDICAL INVESTORS, LLC, d/b/a LIFE CARE CENTER OF AUBURN

122.    The Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 121 above as if expressly set forth herein and further states and avers as follows:

123.    Defendants Ramakrishna Thippanna, MD, Bogdan Nedelescu, MD, and Carolyn Parker, APRN were at all times relevant to this Complaint was an officer, director, managing agent, supervisor or employee of Defendant Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn acting within the scope of their employment.

124.    Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn, under the theory of respondeat superior, has a duty to supervise its employees, such as Ramakrishna Thippanna, MD, Bogdan Nedelescu, MD, and Carolyn Parker, APRN, and is therefore vicariously liable for negligent acts or omissions by its employees made on its behalf.

125.    Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn fell below the standard of care when it failed to properly supervise Ramakrishna Thippanna, MD, Bogdan Nedelescu, MD, and Carolyn Parker, APRN or to have appropriate protocols in

29

place for when someone presents with symptoms similar to those that Ms. Prouty

presented with on November 21, 2014 and thereafter.

126.     Ramakrishna Thippanna, MD, Bogdan Nedelescu, MD, and Carolyn Parker,

APRN, in their capacities as officers, directors, managing agents, supervisors or

employees and acting within the scope of their employment as agents of Fairlawn

Medical Investors, LLC d/b/a Life Care Center of Auburn deviated and fell below the

standard care of an average qualified internal medicine physicians and advanced practice

registered nurse in 2014 in the Commonwealth of Massachusetts and nationwide, where

their actions, conduct, and omissions were negligent and careless.

127.     Through the negligent care of Ramakrishna Thippanna, MD, Bogdan Nedelescu,

MD, and Carolyn Parker, APRN, acting as employees or agents of Fairlawn Medical

Investors, LLC d/b/a Life Care Center of Auburn, Ramakrishna Thippanna, MD, Bogdan

Nedelescu, MD, and Carolyn Parker, APRN breached their affirmative duty to Ms.

Prouty, and Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn is

vicariously liable.

128.     As a proximate cause of this negligent conduct by Fairlawn Medical Investors,

LLC d/b/a Life Care Center of Auburn's agents, Ramakrishna Thippanna, MD, Bogdan

Nedelescu, MD, and Carolyn Parker, APRN, Plaintiff, Ms. Prouty, developed various

serious and debilitating physical and medical conditions including pressure ulcers, leg

contractures, paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a

day, 7 day a week, 365 days a year care and assistance with all activities of daily living.

As a further direct and proximate result of Ramakrishna Thippanna, MD, Bogdan

Nedelescu, MD, and Carolyn Parker, APRN's negligent conduct, Plaintiff Ms. Prouty has

incurred and will continue to incur extraordinary medical, residential, and other expenses to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant Fairlawn Medical Investors, LLC d/b/a Life Care Center of Auburn, for monetary damages to be determined by a jury, plus interest and costs.

## COUNT VII – VICARIOUS LIABILITY
## KAREN PROUTY v. UMASS MEMORIAL MEDICAL GROUP, INC.

129. The Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 128 above as if expressly set forth herein and further states and avers as follows:

130. Defendant Johnny S. Salameh, MD at all times relevant to this Complaint was an officer, director, managing agent, supervisor or employee of Defendant UMass Memorial Medical Group, Inc. acting within the scope of his employment.

131. UMass Memorial Medical Group, Inc., under the theory of respondeat superior, has a duty to supervise its employees, such as Johnny S. Salameh, and is therefore vicariously liable for negligent acts or omissions by its employee made on its behalf.

132. UMass Memorial Medical Group, Inc. fell below the standard of care when it failed to properly supervise Johnny S. Salameh, MD or to have appropriate protocols in place for when someone presents with symptoms similar to those that Ms. Prouty presented with on October 3, 2014 and thereafter.

133. Johnny S. Salameh, MD, in his capacity as an officer, director, managing agent, supervisor or employee and acting within the scope of his employment as an agent of UMass Memorial Medical Group, Inc. deviated and fell below the standard care of an

31

average qualified neurology attending physician in 2014 in the Commonwealth of Massachusetts and nationwide, where his actions, conduct, and omissions were negligent and careless.

134.     Through the negligent care of Johnny S. Salameh, MD, acting as an employee or agent of UMass Memorial Medical Group, Inc., Johnny S. Salameh, MD breached his affirmative duty to Ms. Prouty, and UMass Memorial Medical Group, Inc. is vicariously liable.

135.     As a proximate cause of this negligent conduct by UMass Memorial Medical Group, Inc.'s agent, Johnny S. Salameh, MD, Plaintiff, Ms. Prouty, developed various serious and debilitating physical and medical conditions including pressure ulcers, leg contractures, paraplegia, ongoing bowel and urinary incontinence, and requires 24 hour a day, 7 day a week, 365 days a year care and assistance with all activities of daily living. As a further direct and proximate result of Johnny S. Salameh, MD's negligent conduct, Plaintiff Ms. Prouty has incurred and will continue to incur extraordinary medical, residential, and other expenses to obtain care for the rest of her life, and has suffered severe emotional distress and ongoing permanent physical pain and injury, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Karen Prouty demands judgment in her favor against Defendant UMass Memorial Medical Group, Inc., for monetary damages to be determined by a jury, plus interest and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
PLAINTIFFS,
By their Attorneys,


/s/ Frederic N. Halstrom

Date: September 14, 2017
_____

Frederic N. Halstrom, BBO # 218420
Ingrid A. Halstrom, BBO# 694272
Halstrom Law Offices, PC
P.O. Box 121203 Lafayette Station
Boston, MA  02112-1203
(617) 262-1060
office@halstrom.com