**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KAREN PROUTY,<br>        Plaintiff,<br>v.<br><br>RAMAKRISHNA THIPPANNA, M.D.,<br>BOGDAN NEDELESCU, M.D., IDANIS<br>BERRIOS MORALES, M.D., DOUGLAS<br>PARKER, AS PERSONAL<br>REPRESENTATIVE OF THE ESTATE OF<br>CAROLYN PARKER, R.N., UMASS<br>MEMORIAL MEDICAL GROUP, INC.,<br>and NAM HEUI KIM, M.D.,<br>        Defendants. | CIVIL ACTION<br>NO. 4:17-40126-TSH |

**MEMORANDUM AND ORDER ON LCCA DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 188)**

**May 7, 2020**

**HILLMAN, D.J.**

Karen Prouty ("Plaintiff") filed this action against, *inter alia*, Ramakrishna Thippanna, M.D., Bogdan Nedelescu, M.D., and Douglas Parker, as the personal representative of the estate of Carolyn Parker, R.N. (the "LCCA Defendants"), alleging medical malpractice. The LCCA Defendants move for partial summary judgment as to their liability for any injuries Plaintiff sustained prior to her transfer to Life Care Center of Auburn ("LCCA"), the rehabilitation center at which they worked during the relevant time period. (Docket No. 188). For the following reasons, the Court ***grants*** their motion.

**<u>Background</u>[1]**

On October 3, 2014, Plaintiff was admitted to UMass Memorial Medical Center for pain management after fracturing her ribs in a fall. (Docket No. 208 at 1). Doctors inserted an epidural catheter into her T7 vertebra. (Docket No. 208 at 1). On October 5, 2014, they moved the catheter from her T7 vertebra to her T5 vertebra. (Docket No. 208 at 1). After the switch, Plaintiff reported increasing numbness and weakness in her lower extremities, and she was diagnosed with partial paraplegia and bowel and bladder incontinence two days later. (Docket No. 208 at 2). An MRI of her thoracic spine revealed an epidural hematoma between her T2 and T7 vertebrae. (Docket No. 208 at 2). Doctors performed an emergency laminectomy and epidural evacuation. (Docket No. 208 at 2). Although Plaintiff experienced some increase in strength following the procedure, her bilateral lower extremity weakness and bowel and bladder incontinence persisted. (Docket No. 208 at 2).

On October 15, 2014, Plaintiff was discharged to Fairlawn Rehabilitation Hospital, an acute rehabilitation facility. (Docket No. 208 at 3). She transferred from Fairlawn Rehabilitation Hospital to LCCA on November 21, 2014. (Docket No. 208 at 3). "Upon admission to LCCA, and prior to any alleged actions or inactions of the [LCCA] Defendants, the Plaintiff's bilateral paraplegia, weakness in her lower extremities, and bowel and bladder incontinence continued." (Docket No. 208 at 3). During her time at LCCA, Plaintiff additionally developed increasing lower extremity weakness and pain; lower limb contractures; and pressure ulcers on her heels and coccyx area. (Docket No. 208 at 4–5; *see also* Docket Nos. 208-1 at 6, 208-2 at 10–15, 208-4 at 4, 208-5 at 4, 208-6 at 4).

---

[1] The Court views "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation and internal quotation marks omitted).

Plaintiff filed the instant action on September 14, 2017, alleging medical malpractice. The LCCA Defendants moved for partial summary judgment on March 10, 2020. (Docket No. 188).

## Legal Standard

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.*

## Discussion

To bring a malpractice claim against a medical provider, a "plaintiff must show (1) the existence of a doctor or nurse-patient relationship, (2) that the performance of the doctor or nurse did not conform to good medical practice, and (3) that damage resulted therefrom." *St. Germain v. Pfeifer*, 418 Mass. 511, 516 (1994). The LCCA Defendants contend that, because "Plaintiff does not allege that a physician-patient relationship and/or a medical provider-patient relationship between the Plaintiff and the [LCCA] Defendants existed prior to November 21, 2014," "Plaintiff is unable to establish an essential element of her claims for medical negligence against the [LCCA] Defendants that allegedly occurred prior to November 21, 2014 as a matter of law." (Docket No. 189 at 2). The Court agrees. Plaintiff concedes that she did not have any patient-physician relationship with the LCCA Defendants prior to her admission to LCCA on November 21, 2014. (Docket No. 208 at 3; *see also* Docket No. 121 at 14). She also concedes that she sustained her injuries of lower extremity paraplegia, bowel incontinence, and bladder incontinence "between

October 3, 2014 to October 15, 2014," i.e., prior to that establishment of that relationship.[2] (Docket No. 208 at 3).  Because the undisputed facts demonstrate that Plaintiff did not have any patient-physician relationship with the LCCA Defendants at the time she sustained these conditions, Plaintiff cannot, as a matter of law, establish a claim of medical malpractice against the LCCA Defendants for the development of paraplegia and bowel and bladder incontinence.[3]

Plaintiff suggests that summary judgment is nonetheless inappropriate because she suffered from an indivisible injury and, having allegedly contributed to that injury, the LCCA Defendants are jointly and severally liable for the entirety of her damages.  (Docket No. 205 at 5).  But an injury is only indivisible if "the task of allocating causal responsibility" among the defendants "is not possible." *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317, 327 n.16 (1998); *see also* Restatement (Third) of Torts: Apportionment Liab. § 7 (2000) ("An injury is indivisible if, according to the applicable rules of causation, the plaintiff and each relevant person caused the entire injury.").  And here, Plaintiff's own arguments demonstrate that her injury is capable of division.  She contends, for example, that she developed lower extremity paraplegia and bowel and bladder incontinence between October 3, 2014 and October 15, 2014, and she attributes these conditions to doctors' delay in diagnosing and treating her spinal epidural hematoma at UMass Memorial Medical Center.  (Docket No. 208 at 3).  In contrast, she contends that she developed increasing lower extremity weakness and pain, lower limb contractures, and pressure ulcers on her heels and coccyx area after her admission to LCCA on November 21, 2014, and she attributes

---

[2] To the extent Plaintiff may now suggest that the LCCA Defendants' actions contributed to the development of these conditions, she fails to substantiate this allegation with any evidence, and it runs contrary to undisputed facts in the record.

[3] The Court expresses no opinion as to whether the LCCA Defendants' actions after November 21, 2014, exacerbated Plaintiff's injuries and whether, if they did, Plaintiff may recover for this exacerbation.

these conditions to the negligent care of the LCCA Defendants.  (Docket Nos. 208 at 4–5, 208-4 at 4, 208-5 at 4, 208-6 at 4; *see also* Docket Nos. 121 at 25, 208-1 at 6, 208-2 at 10–15).  That Plaintiff can distinguish between the conditions she developed at LCCA and those she developed at UMass Memorial Medical Center undermines her allegation that it is impossible to allocate causal responsibility among the defendants.[4]  The Court accordingly ***grants*** the motion for summary judgment.

## Conclusion

For the reasons stated above, the LCCA Defendants' motion is ***granted***.  (Docket No. 188).  The LCCA Defendants are entitled to partial summary judgment as to their liability for the injuries Plaintiff sustained prior to November 21, 2014.

**SO ORDERED**

> ***/s/ Timothy S. Hillman***
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**

---

[4]  One of Plaintiff's experts, moreover, could similarly distinguish between the conditions Plaintiff developed at LCCA and those she developed at UMass Memorial Medical Center. (Docket No. 208-2 at 17–22).