UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN PROUTY,<br>               Plaintiff,<br>v.<br><br>RAMAKRISHNA THIPPANNA, M.D.;<br>BOGDAN, NEDELSCU, M.D.; and<br>DOUGLAS PARKER, PERSONAL<br>REPRESENTATIVE OF THE ESTATE OF<br>CAROLYN PARKER, R.N.,<br>               Defendants. | CIVIL ACTION<br>NO. 4:17-40126 TSH |

**ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE REFERENCE TO THE DEPOSITION TRANSCRIPT OF DEFENDANT RAMAKRISHNA THIPPANNA, M.D., AS A DISCOVERY SANCTION OR, ALTERNATIVELY, TO EXCLUDE CERTAIN SUBJECTS RAISED AT THE DEPOSITION (Docket No. 306)**

**MAY 25, 2021**

**HILLMAN, D.J.,**

This is a medical malpractice action brought by Plaintiff against Defendants based upon the medical treatment they provided to her during her admission to the Life Care Center of Auburn ("LCCA"), a skilled nursing and rehabilitation facility, from November 21 to December 19, 2014. Defendants seek a number of remedies for the alleged misconduct of Plaintiff's counsel at the January 8, 2019 deposition of co-Defendant Dr. Thippanna, including barring Plaintiff's counsel from using any of Dr. Thippanna's deposition testimony at trial or, alternatively, striking certain sections of the deposition transcript and ordering Plaintiff's counsel not to reference the national origins or immigration status of any Defendant, their co-workers, or their families.

After hearing argument on the motion at the pretrial conference on May 19, 2021, the motion is **_granted in part and denied in part_**.

## Discussion

The Court considers each component of Plaintiff's two requested remedies in turn: 1) precluding Plaintiffs from using any part of Dr. Thippanna's deposition at trial; or 2) an instruction barring Plaintiffs from referencing the national origins or immigration status of any Defendant, their co-workers, or their families at trial and preventing Plaintiff from cross-examining Dr. Thippanna or referencing certain statements in the deposition transcript by striking Lines 67:11-12; 170:9 to 175:13; and 104:17 to 112:19.  (Thippanna Dep., Docket No. 306-1).

   *1. Sanctions and Precluding Plaintiffs from Any Use of Deposition at Trial*

Under Fed. R. Civ. P. 30(d), the Court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Furthermore, the Massachusetts Professional Rules of Conduct prohibit any attorney appearing in a professional capacity before a tribunal from conduct "manifesting bias or prejudice based on race . . . national origin . . . against a party, witness counsel or other person" unless such conduct is "legitimate advocacy" because race or national origin is an issue in the case. R. 2.4.f.

Dr. Thippanna is one of three providers affiliated with Worcester Internal Medicine who allegedly treated Plaintiff during her stay at LCCA (the parties dispute Dr. Nedelescu's role in Plaintiff's care).  At deposition, Plaintiff's counsel, Attorney Frederic Halstrom, inquired extensively about Dr. Thippanna's background, including his national origin, medical education, and immigration status.  The questions concerning Dr. Thippanna's medical training and

licensure fall within the scope of discovery for a medical malpractice case, as they could have led to relevant evidence concerning Dr. Thippanna's legal standing to practice medicine in Massachusetts or his knowledge of and ability to meet the applicable standards of care for patients with pressure ulcers or who are at high risk of developing pressure ulcers.  However, Attorney Halstrom's inquiries about whether Dr. Thippanna's wife "is an American;" whether his children were "American born;" whether any family members from his birth country have ever visited or lived with him in the United States, and for how long; and whether, after obtaining his student visa, he entered the United States by plane or boat are plainly not relevant to any party's medical malpractice claim or defense and thus fall outside the scope of discovery. (*See generally* 38:11- 47:2).  Similarly, it was improper for plaintiff's counsel to ask Dr. Thippanna whether his former colleague Dr. Nedelescu "married an American" and whether Dr. Nedelescu's children were born in the United States. (43:17-44:19).

Plaintiff's counsel replies that the Federal Rules allow parties to inquire into potentially relevant areas even if the information gleaned will be inadmissible at trial, such as a defendant's insurance coverage or personal assets.  (Docket No. 360 at 2).  I am not convinced by this weak analogy, nor did Plaintiff's counsel attempt to defend or try to explain the potential relevance of the hostile questions about Dr. Thippanna and Dr. Nedelescu's families in their brief opposition to the motion.

Defendants charge that the purpose of the immigration and national origin questions was to "mak[e] Dr. Thippanna an easier target for examination" by "unnerv[ing] and abus[ing] him." (Docket No. 306 at 9).  There is no question that the questions went beyond the standard anodyne remarks used to flesh out a witness' background or the casual conversation used to establish a rapport between examiner and respondent.  I find that the questions demonstrated a

lack of respect towards the opposing party by exposing Dr. Thippanna to offensive anti-immigrant sentiment that was not probative of any material fact in the case. Accordingly, the Court awards Defendants the reasonable fees and costs for defense counsel's time and efforts defending the deposition and litigating this motion.

Defendants seek to preclude Plaintiff from any use of the Thippanna Deposition due to the lines of questioning previously discussed concerning national origin and immigration status. This request is denied. Because the questioning on these topics represents only a small portion of the seven-hour deposition, Plaintiff's counsel has agreed to refrain from referencing these topics at trial, and the rest of the deposition contains information relevant to Plaintiff's claim and Defendants' defenses, precluding Plaintiff from <u>any</u> use of the deposition at trial would be a disproportionate sanction.

   *2. Striking Portions of the Deposition Transcript*

Having decided not to prohibit Plaintiffs from <u>any</u> use of the deposition at trial, the Court turns to Defendant's three requests to strike portions of the deposition transcript that do not pertain to Defendants' national origin or immigration statuses.

   A. <u>Lines 70:18</u>

Defendants' motion to strike Attorney Halstrom's statement that Dr. Thippanna "changed his answer" about the number of physician assistants employed by Worcester Internal Medicine in November - December 2014 is granted.

Upon reviewing the deposition transcript, it is clear that Dr. Thippanna initially answered that there was one physician assistant at Worcester Internal Medicine at that time, but that he could not recall her name. (67:11-12). A few minutes later, Attorney Halstrom told Dr. Thippanna: "And you said a few minutes ago that there were none [referring to physician assistants], but now

4

you're changing your answer to an I don't remember?" (70:17-19). Because Attorney Halstrom mischaracterized Dr. Thippanna's earlier testimony, it would not be fair to allow him to impeach Dr. Thippanna for "changing his answer" at trial.

Lines 70:17-19 are stricken from the deposition transcript.

  B. <u>170:9 to 175:13</u>

Defendants' motion to strike Lines 170:9 to 175:13, which contains most of Attorney Halstrom's questions and Dr. Thippanna's answers regarding a December 3, 2014 physician progress note in Karen Prouty's LCCA medical records, is granted as to all statements concerning whether Dr. Thippanna or a physician assistant student wrote the note.

Attorney Halstrom repeatedly interrupted to prevent Dr. Thippanna from providing a complete answer to his question:

> "Q: You said you – excuse me. You say that you wrote this note; correct?
> A: Yes. But –
> Q: Or did this other person who looks like she's got her name, any name written here, and it says a student, PA student?
> A: Correct.
> Q: Did they write the note or did you write the the note?
> A: Under my supervision, she wrote it. . .
> Q: Doctor, I asked you whether or not this was your writing. You said yes. You're now trying to testify that it's not your writing. It's someone else's writing, a PA student. If – so which is the truth?
> A: Yes. I am legally responsible - -
> Q: Which is the truth, Doctor?
> A: Correct.
> Q: Is this your writing or this is someone else's writing? Which is the truth?
> A: The truth is the PA student wrote that, but under my supervision. And –
> Q: Wait a second."
>
>   (171:18-174:3).

It is obvious from this and other exchanges throughout this section of the transcript that Dr. Thippanna was not evading Attorney Halstrom's questions about what role he played in dictating or supervising the writing of the physician progress note. Instead of allowing Dr. Thippanna to answer, Attorney Halstrom frequently interjected, cutting Dr. Thippanna's nascent explanations short and then accusing him of lying. In short, Attorney Halstrom appeared more concerned with eliciting favorable testimony than obtaining a complete account of the facts. Given this method of questioning, it would be more prejudicial than probative to allow Plaintiff's counsel to impeach Dr. Thippanna about the author of the December 3rd physician's progress note using the deposition testimony in this section.

Lines 179:0 to 175:13 are stricken as to the discussion of whether Dr. Thippanna or a physician assistant student wrote the December 3, 2014 physician progress note. Plaintiff may question Dr. Thippanna about any inconsistencies they perceive in the note at trial, assuming the note is admitted into evidence.

    C.  <u>104:17-112:19</u>

Defendants' motion to strike Lines 104:17-112:19 is denied.

This section of the deposition contains Attorney Halstrom's questions and Dr. Thippanna's answers about several topics, including why a telephone order for Plaintiff would be attributed to Dr. Nedelescu if he was not her patient or had never examined her; whether Worcester Internal Medicine bills patients for telephone orders; and how Worcester Internal Medicine doctors treating patients at LCCA accessed patients' medical records when they were not onsite. Defendants argue the section should be struck because the questions were intended to "catch Defendant flat-footed with information outside of his knowledge in order to characterize facts to suit Plaintiff's

narrative." (Docket No. 306 at 15).  However, Dr. Thippanna testified that he had personal knowledge about each of these topics.  Defendants may object to specific uses of this testimony at trial.

> 3. *Instruction Prohibiting Reference at Trial to the National Origins or Immigration Statuses of any Defendant, their Co-Workers, or their Families*

At the pretrial conference, Plaintiff's counsel agreed to refrain from any mention of the national origin or immigration statuses of any Defendant, their Worcester Internal Medicine coworkers, or any of the Defendants' family members at trial.  Given this representation, the Defendants' requested instruction is redundant.  Should Plaintiff's counsel attempt to introduce evidence or cross-examine any Defendant or witness on these topics beyond what is strictly necessary to establish or question a Defendant's medical training or licensure, the Court will entertain objections and, if necessary, instruct the jury to disregard such statements.

## Conclusion

Motion in Limine # 306 is ***granted in part and denied in part***.  Fees and costs are awarded against Attorney Halstrom for defense counsels' reasonable time and efforts defending the January 8, 2019 Thippanna Deposition and litigating this motion.  To that end, defense counsel shall submit a document itemizing such fees and costs to the Court by the close of business on June 5, 2021.  Defendants' request for an instruction to prohibit Plaintiff from referencing the immigration status or national origin of any party, their coworkers, or their families is moot because Plaintiff agreed to refrain from such conduct at the pretrial conference, though Plaintiff may raise a party's national origin or immigration status only as is strictly necessary to address their licensure or medical training.  For the reasons set forth above, Defendants' motion to strike Lines 70:17-19 and 170:9

to 175:13 of the deposition transcript are granted, but Defendants' motion to strike Lines 104:17-112:19 is denied.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**
