UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN PROUTY,<br>    Plaintiff,<br><br>v.<br><br>RAMAKRISHNA THIPPANNA, M.D.;<br>BOGDAN NEDELESCU, M.D.; and<br>DOUGLAS PARKER, PERSONAL<br>REPRESENTATIVE OF THE ESTATE OF<br>CAROLYN PARKER, R.N.,<br>    Defendants. | CIVIL ACTION<br>NO. 4:17-40126-TSH |

### ORDER ON DEFENDANTS' MOTION FOR TAXATION OF COSTS (Docket No. 413)

**July 20, 2021**

**HILLMAN, D.J.,**

On June 10, 2021, a jury returned a verdict against Plaintiff and the Court entered judgment for Defendants in this medical malpractice action. Before the Court is Defendants' motion for taxation of $15,763.64 in trial costs pursuant to Fed. R. Civ. P. 54(d), including costs for printing deposition transcripts and Plaintiff's medical records, producing chalks, witness fees, and obtaining deposition transcripts from the court reporter. (Docket No. 413). Plaintiff opposes the taxation of any costs in the case. (Docket No. 415).

For the reasons set forth below, Defendants' motion for taxation of costs is ***granted in part***. The bill of costs shall be reduced to $8,255.12.

### Discussion

Fed. R. Civ. P. 54(d) provides that costs should be allowed to the prevailing party, unless a federal statute, authority, or a court provides otherwise. Despite the broad discretion provided

in R. 54(d), a court may only award those costs permitted under 28 U.S.C. § 1920, which include: "(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of paper necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." *Crawford Fitting CO. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  The District Court for the District of Massachusetts' procedures for filing a bill of costs, which includes instruction on which trial costs are taxable, are available at: https://www.mad.uscourts.gov/resources/pdf/taxation.pdf.

1. **Printing Costs**

   A. Deposition Printing Costs

   28 U.S.C. § 1920(4) allows the prevailing party to tax "exemplification and the costs of making any materials where the copies are necessarily obtained for use in the case."

   Plaintiffs seek $287.28 for the cost of printing four copies of the depositions of each of the eleven witness who testified at trial. I find that the reported $.07 cent per page price to print the depositions was reasonable for the Worcester region.  I also find that Plaintiff's argument that none of the printed depositions were used at trial is unavailing.  § 1920 merely requires that the copies were necessarily obtained for use in the case.  It is standard procedure for counsel impeaching or refreshing a witness' recollection to have multiple copies of a witness' deposition on hand to provide to the Court, the witness, and opposing counsel.  Therefore, the deposition printing costs are allowed.

B.  <u>Medical Records Printing Costs</u>

Defendants seek $1,099.39 for the cost of printing a complete set of Plaintiff's medical records. Plaintiff charges that Defendants' decision to print out all 26,176 pages of her medical records was excessive where the bulk of the records were provided electronically and no paper medical records were used at trial. Defendants have not provided a justification in their motion seeking costs, but many of the medical records were moved into evidence at trial. The First Circuit has held that copying costs which were reasonably necessary to the maintenance of the action are allowable, even if they are not filed as evidence in the case. *See Rodriguez-Garcia v. Davila*, 904 F.2d 90, 100 (1st Cir. 2009).

While the medical records are voluminous, plaintiff's health prior to her admission at Life Care Centers of Auburn (where the alleged malpractice occurred), during her treatment by Defendants at that facility, and her recovery and subsequent health were all at issue in this case, and so maintaining all 26,176 pages of Plaintiff's medical records was reasonably necessary to the action. While many of the records may have been produced digitally and shown to the jury in an electronic format, it was reasonable for Defendants' counsel to print one set of hard copies to preserve the evidence in order to maintain their case for their clients. I find that the reported $.07 cent per page price to print these records was reasonable for the Worcester region. The medical record printing costs are allowed.

**2. <u>Chalks</u>**

Courts applying First Circuit law disagree about whether § 1920 includes demonstrative exhibits that are not mere reproductions of trial exhibits. *Compare Data General Corp. v. Grumman Systems Support Corp.*, 825 F.Supp. 361, 367-68 (D. Mass. 1993) (finding that exemplification can include "maps, charts, graphs, photographs, motion pictures, photostats, and

kindred materials") and *U.S. v. Davis*, 87 F.Supp.2d 82, 88 (D.P.R. 2000) (finding that exemplification costs include demonstrative evidence such as models, charts, photos, illustrations, and other graphic aides) with *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1375-76 (Fed. Cir. 2006) (concluding that the First Circuit would likely adopt a narrow definition of exemplification excluding prevailing party's costs for computer animations, videos, PowerPoint presentations, and graphic illustrations in patent infringement suit). The more recent cases adopt *Davis*' approach but caution that "there must be a showing that the fees are necessary as opposed to merely convenient or helpful." *Osorio v. One World Technologies, Inc.*, 834 F.Supp.2d 10, 23-24 (D. Mass. 2011) (finding that demonstration models, "graphics," and "demos" in patent infringement case could not be taxed because prevailing party had not specified that "any were successful to his success or necessary for the jury's understanding of the issues at trial") (citing *Martinez v. Cui*, 2009 WL 3298080 at *4, D. Mass. Apr. 13, 2009) (reducing bill of costs because defendant's blow-up of a timeline of events was not essential to defendant's success or necessary for jury's understanding of issues at trial)); *see also Bowling v. Hasbro*, 582 F.Supp.2d 192, 2019 (D.R.I. 2008) (awarding costs for trial demonstratives); *see also Walsh v. Paccar*, 2007 WL 9797532 at *3 (D. Mass. July 25, 2007) (assuming that charts, trial boards, and photographic enlargements could be taxed, but declining to do so in a non-complex case which could have easily been presented without them).

     I disagree that each of the ten chalks that Defendants prepared in advance of trial were essential to their success and necessary for the jury's understanding of the issues. This was a complex case that required the jurors to understand the causes, formation, progression, and presentation of pressure ulcers, distinguish between a deep issue injury and a pressure ulcer (conditions which have different causes but similar appearances), and consider the skin's ability

to heal from a prior pressure ulcer. The lay jury likely had little background knowledge or frame of reference for any of these issues. Under these circumstances, Chalks 3, 4, 5, and 6, which illustrate the change in skin over the human lifecycle and the development and progression of pressure ulcers and deep tissue injuries, were necessary to the Defendants' case. However, Chalks 1, 2, 7, 8, 9, and 10 either depict anatomical details which were non-essential to resolving Plaintiff's claims against Defendants or could be easily explained by oral testimony and were therefore merely helpful. For example, Chalk 1, which details the twenty-two different components present in human skin, was extraneous to the central issues in the case; nothing in the case record leading up to trial suggested that knowledge of any of those 22 terms was necessary for the factfinders to understand. (Docket No. 413-2 at 1). Chalk 2, a drawing of a human skeleton with the ankles, coccyx, back, and shoulders circled to show the areas of the body prone to pressure ulcers, conveyed a simple idea that was quickly conveyed by defendants' experts. (Docket No. 413-2 at 2).

Defendants' costs to prepare demonstrative exhibits are allowed as to Chalks 3, 4, 5, and 6 only. This reduces the taxable costs for chalks from $8,699.22 to $3,000.

### 3. Witness Fees

28 U.S.C. § 1821 provides that witnesses shall be paid a daily $40 attendance fee. Fees for witnesses who are parties to the litigation are generally not taxable, while witness fees for expert witnesses are taxable so long as their testimony was relevant and reasonably necessary to the case. *See Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (affirming that expenses incurred to procure prevailing defendant's presence at trial are not taxable costs); 8D Charles Alan Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 2678 (4th ed. Apr. 2021). Defendants may recover witness fees for their expert witnesses because Dr. Fereshetian and Dr.

O'Malley's testimony that Defendants complied with the applicable standard of care in their treatment of Plaintiff was central to the resolution of the case, whereas witnesses fees for Dr. Thippanna, Dr. Nedelescu, and Douglas Parker are not available due to their status as Defendants.

Defendants' motion for $80.00 in witness fees for Dr. Fereshetian and Dr. O'Malley is granted, but Defendants' motion for $160.00 in witness fees for Defendants is denied.

### 4. Obtaining Deposition Transcripts from Court Reporter

Plaintiff's final request, pursuant to § 1920(2), is for the cost of obtaining seven deposition transcripts from the court reporter. Under the statute, fees for transcripts are only allowed if the transcripts were "necessarily obtained for use in the case." § 1920(2). Depositions which are introduced into evidence or used at trial should be taxed, whereas depositions which were not introduced into evidence or used at trial may taxed at the district court's discretion if special circumstances warrant it. *See Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir. 1985). The "necessity" for the deposition "is determined at the time of taking and the fact that the deposition is not actually used at trial is not controlling." *Martinez v. Cui*, 2009 WL 3298080 at *2 (D. Mass. Apr. 13, 2009) (quoting *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989)).

Defendants seek $5,437.75 for obtaining transcripts for the depositions of Ashley Alexion, Jillian White, Plaintiff, Jane Prouty, Dr. Seignious (Plaintiff's expert), Dr. O'Malley (Defendants' expert), and Donna McElroy-Routhier on the basis that it was necessary to have copies of each transcript on hand at trial for impeachment purpose or witness examination.

Several courts within this District have found that "the costs of the parties' own deposition transcripts were not "necessarily incurred" because the "testimony of these

6

individuals, as parties to the litigation, was readily available without the need of deposition transcripts." *Hillman v. Berkshire Medical Center, Inc.*, 876 F.Supp.2d 122, 127 (D. Mass. 2012) (citing *Legrice v. Harrington*, 2010 WL 2991670 at *1 (D. Mass. July 26, 2010)); *see also Palomar Technologies, Inc. v. MRSI Systems*, LLC, 2020 WL 4938414 at *5 (D. Mass. Aug. 12, 2020) (striking prevailing party's costs for deposition transcripts of its own employees or expert witnesses). "The theory behind this prohibition is that such a transcript is only for the convenience of counsel or discovery purposes." *Palomar* at *5. Accordingly, the motion for $1327.70 in deposition transcript costs for Defendants' expert witness Dr. O'Malley is disallowed.

The deposition transcript costs for the remaining witnesses, including Plaintiff, Plaintiff's caretaker and daughter Jane Prouty, Plaintiff's expert Dr. Seignious, the two nurses who treated Plaintiff at the skilled nursing facility where the alleged malpractice occurred (Alexion and White), and the facility's 30(b)(6) deponent McElroy Routhier, are allowed. Each of these depositions was reasonably necessary when it was obtained based on the witness' relevant knowledge about the case or Plaintiff's health. Plaintiff's argument that few of the depositions were introduced at trial or used for impeachment purposes overlooks that under §1920 necessity is determined at the time of the deposition, not its use at trial. Moreover, the Court cannot fault Defendants for making limited use of Plaintiff's deposition on cross-examination, as Plaintiff appeared for trial and testified but had difficulty remaining conscious due to medication, or the depositions of Alexion, White, and McElroy-Routhier, whom Plaintiff called as witnesses but testified very briefly and provided little testimony that could serve as useful fodder for cross-examination or impeachment.

Plaintiff has provided some uncontroverted evidence suggesting that the deposition transcript costs for Dr. Seignious may include the cost for the transcript as well as the videorecording of the deposition. (*See* Seignious Deposition Invoice, Docket No. 415-12 at 1). Under the Court's taxation guidance, deposition video recordings are only taxable with prior permission. To prevent Defendants' from an improper double recovery, the costs for Dr. Seignious' deposition are reduced from $921.60 to $600.

Defendants' motion for court reporter costs in the amount of $5,437.75 is reduced to $3,788.45.

## Conclusion

Defendants' motion for taxation of costs is **_granted in part and denied in part_**. In light of the foregoing, Defendants' bill of costs will be reduced as follows:

|  | Requested Amount | Awarded Amount |
|---|---|---|
| Deposition Printing Costs | $ 287.28 | $ 287.28 |
| Medical Records Printing Costs | $ 1,099.39 | $ 1,099.39 |
| Chalks | $ 8,699.22 | $ 3,000.00 |
| Witness Fees | $ 240.00 | $ 80.00 |
| Court Reporter Costs | $ 5,437.75 | $ 3,788.45 |
|  |  |  |
| **Total** | **$ 15,763.64** | **$ 8,255.12** |

**SO ORDERED**

                                                          */s/ Timothy S. Hillman*
                                                        **TIMOTHY S. HILLMAN**
                                                            **DISTRICT JUDGE**