UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN PROUTY,<br>            Plaintiff,<br><br>       v.<br><br>RAMAKRISHNA THIPPANNA, M.D.;<br>BOGDAN NEDELESCU, M.D.; and<br>DOUGLAS PARKER, PERSONAL<br>REPRESENTATIVE OF THE ESTATE OF<br>CAROLYN PARKER, R.N.,<br>            Defendants. | CIVIL ACTION<br>NO.  4:17-40126-TSH |

## ORDER ON MOTION FOR NEW TRIAL (Docket No. 416)

**August 16, 2021**

**HILLMAN, D.J.,**

After an eight-day trial, on June 10, 2021 the jury returned a verdict against Plaintiff and the Court entered judgment for Defendants in this medical malpractice action. The case turned on whether Defendants Dr. Thippanna, Dr. Nedelescu, and Nurse Practitioner Parker complied with the applicable standard of care during Plaintiff's 2014 stint as a patient at Life Care Center of Auburn, a skilled nursing facility, and whether their actions or omissions caused her injuries. Before the Court is Plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59(a), which includes her request for "fees and costs . . . stemming from the conduct of defense counsel." (Docket No. 416 at 2).

For the reasons set forth below, Plaintiff's motion is ***denied***.

**Legal Standard**

"A district court may grant a new trial "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *Burnett v. Ocean Properties, Ltd.*, 987 F.3d 57, 72 (1st Cir. 2021) (citing *Sánchez v. Foley*, 972 F.3d 1, 16 (1st Cir. 2020) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 59(a). "In assessing the effect of allegedly improper conduct by counsel, the Court must examine the totality of the circumstances, including (1) the nature of the comments; (2) their frequency; (3) their possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comments; (5) the strength of the case; and (6) the verdict itself." *Granfield CSX Transp., Inc.*, 597 F.3d 474, 490 (1st Cir. 2010) (citing *P.R. Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68, 82-82 (1st Cir. 2010). Whereas a district court considering a motion for judgment as a matter of law must construe the evidence in the light most favorable to the verdict, "a district court is free to independently weigh the evidence" when considering a motion for a new trial. *Id*. at 16.

**Discussion**

Plaintiff moves for a new trial asserting three grounds of alleged error. First, Plaintiff objects to the Golden Rule-type argument and other remarks made by defense counsel during closing arguments. Second, Plaintiff argues that she was prejudiced when defense counsel published an outdated case caption to the jury bearing the names of dismissed Defendants. Third, Plaintiff argues that Defendants' closing statement contained impermissible argument concerning Plaintiff's assumption of the risk or contributory negligence for her injuries. I find that Plaintiff preserved each of these challenges at trial through contemporaneous objections or motions for mistrial. I agree with Defendants that none of these grounds constitutes injustice that

merits a new trial, though I take issue with Defendants' counsel's affirmation that "no statements made during closing argument to the jury were improper"—if that were the case, I certainly would not have issued a limiting instruction advising the jury to disregard certain of his remarks.

First, Defendants' counsel's Golden Rule argument was improper, but it fell far short of the standard required for a new trial and any prejudice was mitigated by the Court's curative instruction. In order to protect juror neutrality, the so-called Golden Rule "prohibits attorneys from suggesting that the jurors place themselves in the shoes of the plaintiff." *Burnett v. Ocean Properties, Ltd.*, 987 F.3d 57, 75 (1st Cir.). Golden Rule arguments may be prohibited, but they are not *per se* reversible error; the court must evaluate the effect of counsel's comment under the totality of the circumstances to determine whether a violation was so prejudicial that a new trial is warranted. *Id*. Additional factors the court should consider include: "1) the nature of the comment[ ]; (2) [its] frequency; (3) [its] possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comment[ ]; (5) the strength of the case; and (6) the verdict itself." *Id.* (citing *Rodriguez v. Senor Frog's de la Isla, Inc.*, 642 F.3d 28, 37 (1st Cir. 2011).

During closing arguments, Defendants' counsel encouraged jurors to weigh the relative credibility of each side's expert witnesses by "[i]magin[ing] that you're being wheeled down the halls of a hospital" and being asked to decide whose expert they would want as their doctor ("They need an answer."). (Docket No. 411 at 8-110:13-111:25). In a typical Golden Rule argument it is *Plaintiff's counsel* who makes an improper emotional appeal on behalf of their injured client, typically to score a higher damages award; here *Defendants' counsel* played on the jurors' passions in order to argue the superiority of their expert. Nonetheless, this reverse Golden Rule argument implicitly (if somewhat vaguely) invited the jury to put themselves in the

3

Plaintiff's shoes — Plaintiff has partial paralysis and is confined to a power wheelchair. The jury was well aware of this fact, as the Plaintiff testified and watched the trial from her wheelchair, and Plaintiff's adult children testified at length about their mother's chronic pain and immobility. Even if the Court adopts Defendants' counsel's view that this hypothetical was intended to "contextualize" the jury's expert credibility determination rather than reference the Plaintiff's injuries, it was still improper because its purpose was to drive the jury to make a critical determination in the case—whose experts were more compelling—from an emotional rather than a rational state of mind. This, of course, is why Golden Rule arguments are "universally condemned"— because "they encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than evidence." *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988). Also, it directed the jury to make the wrong credibility determination: the issue was not which expert would be the best doctor for a hypothetical patient with an undetermined malady "being wheeled down the halls of the hospital," but which expert had the most relevant experience and training and testified more credibly about the causes of Plaintiff's particular injuries and the applicable standard of care for a patient with Plaintiff's medical condition in Massachusetts in 2014, the year the alleged malpractice occurred.

      Nonetheless, the remark was brief, Defendants' counsel did not repeat his error once Plaintiff's objection was sustained, and the Court acted quickly to dispel any prejudice. On top of the standard jury instruction that the lawyers' arguments are not a substitute for evidence, after a short recess the Court took the added precaution of issuing a curative instruction to mitigate any prejudice from defendants' counsel's comment that repeated the Golden Rule-style argument, declared that it was improper, and ordered jurors to disregard it. While expert

credibility was a key issue, the case does not appear to have been a close one in the eyes of the jury, which returned a verdict in about one hour and fifteen minutes. Assessing the evidence independently, it is the Court's opinion that prejudice against Plaintiff caused by the Golden Rule violation was minimal. Also, it was outweighed by Plaintiff's unpersuasive testimony that she could not recall basic facts about her stay at Life Care Center of Auburn or her doctor-patient interactions with Defendants, making it unlikely that the Golden Rule argument swayed the jury. The First Circuit has upheld the denial of relief for a Golden Rule violation much more egregious than this one. *See, e.g. Forrestal v. Magendentz*, 848 F.3d 303, 308-09 (1st Cir. 1988) (upholding denial of new trial in medical malpractice case involving brain damage to child plaintiff where plaintiff's counsel told the jury to ask themselves "if this were my child, what amount of money would I accept for my child to have [plaintiff]'s injuries and inflictions.").

I further find that under a totality of the circumstances approach the other remarks during Plaintiff's counsel were not so prejudicial as to warrant a new trial.

It is beyond dispute that the publication to the jury of the unadmitted and outdated case caption sheet bearing the names of former defendants and one entity which was later substituted for the proper party (Fairlawn Rehabilitation Hospital) violated my pre-trial order, but the error was not so prejudicial as to warrant a new trial when examining the totality of the circumstances. This case was unusually complex because the Plaintiff alleged that she was paralyzed by a poorly administered epidural at UMass Memorial Hospital before she arrived at Life Care Center of Auburn, where she was transferred for treatment and rehabilitation by Defendants for the paralysis and its effects and experienced a second set of injuries—pressure ulcers and leg contractures. This trial was limited to the latter injuries. To prevent any prejudice against the Plaintiff based on a misconception that she had already been compensated for pressure ulcers or

leg contractures, I granted Plaintiff's motion in limine to bar any reference to prior settlements. (Docket Nos. 315, 366). With the exception of Fairlawn, the parties shown in the case caption had settled unrelated medical claims that arose before Plaintiff's admission to Life Care Centers of Auburn and were dismissed from the case years before this trial.

Defendants' counsel argues that they displayed the outdated case caption by mistake after their digital presentation program crashed mid-trial, leaving them scrambling to call up individual PDF documents and exhibits from their personal computers. (Day 6 Trial Transcript 6-196:11-198:21, Docket No. 418-3). Whether the publication was accidental or intentional, the Court ordered the outdated caption sheet taken down immediately after Plaintiff's counsel objected, so it was only on display for a short time. It is plausible but unlikely that lay jurors were familiar enough with the litigation process to connect the dots that a longer case caption meant there were prior Defendants in the case, and then imply that those prior Defendants might have been dismissed because they paid a settlement to Plaintiff. Out of an abundance of caution, on the same trial day as this unfortunate lapse the Court provided the following curative instruction, which was carefully worded to avoid compounding any prejudice:

> "Earlier today during the defendants' examination of Dr. Nedelescu, a caption from a civil lawsuit was shown on the screens. That should not have been – that should have not have happened because that is not admissible; it has nothing to do with anything that we're doing here. So to the extent that you did see that, please disregard it, and don't speculate about any information that you may have seen, and you are, of course, not to discuss it even during the deliberation phase if you did see it. That is because you are to decide this case only on the admissible evidence and not on things that you were not supposed to see."
>
> (6:214:18-23).

At the close of trial, the Court supplemented its jury instructions to reinforce the divisible nature of Plaintiff's injuries:

> "During the trial, you heard testimony that the plaintiff broke several ribs, had emergency spinal surgery, and became partially paralyzed before she arrived at Life Care Centers of Auburn. You have also heard evidence that she was treated at Fairlawn Rehabilitation Hospital before she arrived at Life Care Centers of Auburn. None of the defendants in this case are liable for any injuries that the plaintiff incurred before she arrived at Life Care Centers of Auburn because none of the defendants owed her a duty of care before she arrived at Life Care Centers of Auburn. The only issue for you to decide is whether Dr. Thippanna, Dr. Nedelescu, and/or Nurse Practitioner Parker's treatment and care of Karen Prouty at the Life Care Centers of Auburn violated the standard of care for their professions, and whether their conduct was a cause of Karen Prouty's pressure ulcer on her coccyx (tailbone area), pressure ulcers on her heels, and leg contractures."

In the event that any juror saw the caption sheet and was able to extrapolate that there were prior defendants in the case, and take that analysis a step further and surmise that those defendants might have entered into prior settlements with Plaintiff, I find that these two instructions mitigated any prejudice and served to prevent a miscarriage of justice.

With respect to the final grounds for a new trial, I find that Defendants' counsel did not argue Plaintiff's contributory negligence or assumption of the risk in his closing statements. Both defenses have been abolished in negligence cases under Massachusetts law (the applicable substantive law in this case), but Attorney Malley hewed to the but-for causation standard that I included in the jury instructions as set forth by the Supreme Judicial Court in *Doull v. Foster*. *See* M.G.L. c. 231 § 85; 487 Mass. 1 (2021).[1] It is true that Attorney Malley argued that Plaintiff developed leg contractures because "chronic pain prevented her from fully engaging with rehabilitative care,"[2] and that Plaintiff's "significant conditions," including paralysis/lack of

---

[1] "Attorney Malley: When the Court instructs you on the law, you will hear about causation. When you do, I want you to remember two words: but for. 'But for' means that but for Nurse Practitioner Carolyn Parker, but for Dr. Thippanna, but for Dr. Nedelescu, plaintiff would not have developed a pressure injury." (Closing Arg., Trial Tr. Day 8 107 9-12; 112:1-6).
[2] Based upon testimony and Plaintiff's medical records, the Court believes this refers to Plaintiff's refusal to engage in prescribed physical therapy.

7

mobility, poor nutrition, and history of refusing care caused the progression or development of the pressure ulcers (evidence admitted at trial showed that at various times she refused to eat or drink, move around, or leave her bed).  (Trial Tr. Day 8 8-112:21-23).   As the SJC stated plainly in *Doull*, in negligence causation inquires "[t]he focus remains [] only on whether, in the absence of a defendant's conduct, the harm would still have occurred." *Id*. at 987.  There is a difference between counsel asking the jury to hold Defendants not liable if it finds that Plaintiff's condition played *any* role in the development of her pressure ulcers or leg contractures and counsel asking the jury to consider the weight of those factors when it determines whether Plaintiff's injuries would have occurred in the absence of Defendants' conduct.  Defendants' counsel made the latter, permissible argument in their closing statement by arguing, in effect, that Plaintiff's injuries were inevitable given her restricted movement and weakness.  (Trial Tr. Day 8 8 107 9-12: ""You heard Dr. Fereshetian [Defendant's expert] testify that despite adequate care, this wound would have progressed.   You heard Dr. Fereshetian testify that even under optimal care, this wound have progressed . . .").

## Conclusion

The motion for a new trial (Docket No. 416) is ***denied***.  The Clerk shall mark for identification in the list of trial exhibits the first page of Mark Prouty's deposition, which is attached to Plaintiff's motion as Exhibit 2 at Docket No. 416-2.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
